Roger A. Hines and Joanne Hines v. Commissioner.
Hines v. Commissioner
Docket No. 85414.
United States Tax Court
T.C. Memo 1961-203; 1961 Tax Ct. Memo LEXIS 146; 20 T.C.M. (CCH) 1028; T.C.M. (RIA) 61203; July 10, 1961
Roger A. Hines, pro se, 1202 Redleaf Rd., Carrcroft, Wilmington, Del Frederick A. Levy, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: The respondent determined a deficiency in petitioners' income tax for the calendar year 1957 in the amount of $228.35. The issue for decision is whether certain expenses incurred and paid by petitioner during 1957 for tuition and books at Temple University, School of Law, and for transportation from his place of employment to the law school and return and for his dinners on the evenings *147 he attended school are deductible as ordinary and necessary business expenses under section 162(a) of the Internal Revenue Code of 1954. Findings of Fact Petitioners are husband and wife. During 1957 they resided at 1202 Redleaf Road, Carrcroft, Wilmington 3, Delaware, and filed a joint income tax return for the taxable year ending December 31, 1957, with the district director of internal revenue at Wilmington, Delaware. Roger A. Hines, hereinafter referred to as petitioner, was first employed by the E.I. du Pont de Nemours and Company, hereinafter referred to as du Pont, in October of 1946 as a chemist assigned to perform research in the Research Division of the Ammonia Department, now renamed the Polychemicals Department. He continued in this assignment until August 1956. Petitioner holds an A.B. degree with a major in Chemistry, awarded to him by Harvard University in 1941 and the degree of Ph.D. with a major in Chemistry, awarded to him by the University of North Carolina in 1947. In 1953, petitioner was offered the position of patent chemist in the Patents and Contracts Division of the Polychemicals Department of du Pont. He was informed by the *148 manager of the Patents and Contracts Division of the Polychemicals Department that if he accepted such position he would be required to enroll in a law school at his own expense for the purpose of obtaining a law degree. The petitioner declined the position at that time because of his impending marriage and the requirement of attending law school. The petitioner's declination of the position of patent chemist in no way jeopardized his position as a research chemist with du Pont. Between 1953 and 1955, petitioner became interested in the work performed by patent attorneys. In August of 1956, petitioner was again offered the position of patent chemist in the Patents and Contracts Division of the Polychemicals Department of du Pont. He was again informed and knew of the requirements to enroll in a law school at his own expense for the purpose of obtaining a law degree. He accepted this new position under those conditions, and he remained in that position throughout 1957. The change of position from research chemist to patent chemist did not include a pay raise for petitioner at the time of the transfer. Petitioner's duties as a patent chemist consisted of carrying on a program of *149 protecting the technical information of the du Pont Company. In September of 1956, petitioner, in accordance with the conditions of his new assignment, matriculated at Temple University, School of Law, located in Philadelphia, Pennsylvania, taking courses towards a Bachelor of Laws Degree. Prior to September of 1956, petitioner had no previous formal education in the field of law. Petitioner acquired new skills by attending law school. Throughout the calendar year 1957 petitioner attended Temple University, School of Law. Classes were held from 6:30 p.m. to 8:30 p.m. on 150 evenings. Petitioner was not away from home overnight. He incurred the following expenses in connection with his attendance: Tuition
$412.50
Books
45.86
Transportation [1]
345.00
Meals
150.00
Petitioner was not reimbursed by du Pont for any expenses incurred in connection with his matriculation at Temple University, School of Law, during 1957. In June of 1960, petitioner graduated from Temple University, School of Law, and was awarded a Bachelor of Laws Degree. In September of 1960, *150 petitioner was advised that he had passed the bar examination of the District of Columbia, and on November 1, 1960, he was admitted to the bar of the District of Columbia. On October 1, 1960, petitioner was promoted to the position of patent attorney in the Polychemicals Department of du Pont. The petitioner's being admitted to the bar changed the duties which he could perform for the Polychemicals Department of du Pont. The manager of the Patents and Contracts Division of the Polychemicals Department of du Pont has the authority to hire and discharge employees. No individual was ever hired who made it clear that he would not agree to go to law school even though he possessed other necessary qualifications. It is the desire of the manager of the Patents and Contracts Division to have every member of his professional staff an attorney. The du Pont Company maintains a pay system based on levels. Patent chemists and patent attorneys are on different levels and though there is an overlapping of salary limits, the top of the patent attorney level is higher than that of a patent chemist. A patent attorney would, therefore, have an opportunity of going to a higher salary than a patent *151 chemist. An individual accepting a position as a patent chemist could reasonably anticipate that upon receiving his law degree he would receive advancement in position and salary. Other departments in du Pont do not require patent chemists to attend law school. All patent chemists working in the Patents and Contracts Division of the Polychemicals Department who graduated from law school and were admitted to a bar were promoted to the position of patent attorney unless transferred. Now that petitioner is a patent attorney, he can represent du Pont Corporation in the Federal Courts, an activity he could not have performed prior to his becoming an attorney. It was not necessary to be an attorney to represent inventors before the patent office. Petitioners, on their income tax return for 1957, deducted as educational expense $478.36 stated to consist of a payment to Temple University of $412.50 and books at a cost of $65.86 and deducted as travel expense the amount of $495, consisting of transportation expenses to and from Philadelphia in the amount of $345 and food in the amount of $150, stating that this travel expense was incurred in connection with evening courses at Temple University. *152 The respondent disallowed the claimed deductions for tuition, books, transportation expense, and food totaling $973.36 with the explanation that such amounts represented personal expenses nondeductible under section 262 of the Internal Revenue Code of 1954. The primary purpose of petitioner's attending Temple University, School of Law, was to obtain a new position or substantial advancement in position or to fulfill his general educational aspirations. Some of the facts have been stipulated and are found accordingly. Opinion Petitioner contends that the expenses in the amount of $973.36 incurred and paid by him for tuition and books at Temple University, School of Law, and transportation from his place of employment in Wilmington to the law school in Philadelphia and his dinners on the evenings he attended school are all deductible under the provisions of section 162(a) of the Internal Revenue Code of 1954 and section 1.162-5, Income Tax Regulations. Petitioner states that his primary purpose in undertaking the study of law at Temple University was to fulfill the requirements of his employer for the retention *153 of his salary, status, or employment. Respondent contends that under paragraph (b) of section 1.162-5, Income Tax Regulations, the deduction should be denied to petitioner since the education was undertaken by petitioner primarily for a new position or substantial advancement in position or to fulfill the general educational aspirations of the petitioner. It is clear from the evidence that petitioner would not have been given the position of patent chemist if he had not agreed to attend law school. In fact, petitioner refused an offer of a position as patent chemist in 1953, since, for personal reasons, he was unwilling at that time to enroll in and attend law school. It is also clear from the evidence that it was the custom of du Pont to promote a patent chemist to a patent attorney upon the receipt of a law school degree and admission to the bar. As the case is posed by the parties, both rely on section 1.162-5, Income Tax Regulations. The question is narrowed to the primary purpose for which petitioner undertook his education. On the basis of the evidence presented, we have found as a fact that the education was undertaken *154 by petitioner primarily to obtain a new position or substantial advancement in position or primarily for the purpose of fulfilling his general educational aspirations. Petitioner had been employed for 10 years as a chemist in the Research Division of the Polychemicals Department of du Pont Company. The evidence shows that petitioner could have retained this position without any requirement that he attend law school. Petitioner chose to accept a transfer to the position of patent chemist in the Patents and Contracts Division of the Polychemicals Department with full knowledge when he did so that his acceptance of this position would require his attendance at law school and the anticipation that upon receiving his law degree he would receive advancement in position and salary. The record also shows that prior to 1956 petitioner had become interested in the type of work performed by patent attorneys. Petitioner was aware that by being admitted to the bar he could perform duties of a different character for the Polychemicals Department of du Pont than those he could perform as a research chemist or patent chemist. Considering all of the facts here present, we think it is clear that *155 petitioner did not undertake his law studies at Temple University for the primary purpose of retaining his salary, status, or employment. Cf. Joseph T. Booth III, 35 T.C. 1144 (Mar. 31, 1961). Petitioner relies chiefly on the case of Marlor v. Commissioner, 251 F. 2d 615, (C.A. 2, 1958), reversing 27 T.C. 624. The Marlor case is clearly distinguishable from the instant case. In the Marlor case the taxpayer was given a temporary appointment as a tutor lasting for 1 year after which he was eligible for reappointment for another year's term only if he pursued studies toward attainment of a doctor's degree. To obtain a permanent position as an instructor the taxpayer in the Marlor case was required to obtain his doctor's degree. The educational expense in the Marlor case was held by the Circuit Court to have been incurred by the taxpayer primarily to retain his position as a tutor. In the instant case petitioner could have retained his permanent position as a research chemist without being required to attend law school. We sustain the respondent's determination. In view of our holding that no portion of the $973.36 is deductible by petitioner, *156 it is unnecessary for us to consider respondent's alternative position that in any event the amounts expended by petitioner for transportation and food are not deductible. Decision will be entered for the respondent. Footnotes
1. From petitioner's place of employment in Wilmington, Delaware to Philadelphia, Pennsylvania.↩